UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEITH J. WILLIAMS,

      Plaintiff,

v.

JOHN DOE, et. al.,

      Defendants, et. al.,

_____/

Case No. 25-cv-11651
Honorable Linda V. Parker

## OPINION AND ORDER PARTIALLY DISMISSING THE COMPLAINT

Keith J. Williams, confined at the Marquette Branch Prison (MBP) in

Marquette, Michigan, filed a *pro se* civil rights complaint pursuant to 42 U.S.C.

§ 1983 on June 3, 2025.  (ECF No. 1.)  For the reasons stated below, the complaint

is **DISMISSED IN PART** for failing to state a claim for relief.

### I. Standard of Review

Plaintiff has been permitted to proceed without prepayment of fees.  *See* 28

U.S.C. § 1915(a); *McGore v. Wrigglesworth,* 114 F.3d 601, 604 (6th Cir. 1997).

However, 28 U.S.C. § 1915(e)(2)(B) states:

> Notwithstanding any filing fee, or any portion thereof, that may have
> been paid, the court shall dismiss the case at any time if the court
> determines that:
>
> > (B) the action or appeal:
> >
> > > (i)     is frivolous or malicious;

1

        (ii)     fails to state a claim on which relief may be granted; or

        (iii)    seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous if it lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *see also Denton v. Hernandez*, 504 U.S. 25, 32 (1992). *Sua sponte* dismissal is appropriate if the complaint lacks an arguable basis when filed. *McGore,* 114 F.3d at 612.

While a complaint "does not need detailed factual allegations," the "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (footnote and citations omitted). Stated differently, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To prove a prima facie case under 42 U.S.C. § 1983, a civil rights plaintiff must establish that: (1) the defendant acted under color of state law; and (2) the offending conduct deprived the plaintiff of rights secured by federal law. *Bloch v.*

*Ribar*, 156 F.3d 673, 677 (6th Cir. 1998) (citing *Parratt v. Taylor*, 451 U.S. 527,

535 (1981)).  "If a plaintiff fails to make a showing on any essential element of a

§ 1983 claim, it must fail."  *Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir.

2001).

## II.  Facts as Alleged in the Complaint

Plaintiff alleges that starting on March 25, 2023, while incarcerated at the

Jackson Correctional Facilities (JCF) in Jackson, Michigan, defendants denied

several grievances that he filed concerning various prison conditions.  Upon his

transfer to the Lakeland Correctional Facility (LCF) in Coldwater, Michigan, and

his subsequent transfer to the MBP in Marquette, Michigan, where he currently is

incarcerated, Plaintiff alleges that several of the defendants have continued to deny

his prison grievances.  Plaintiff alleges that the Michigan Department of

Corrections routinely denies prisoner grievances, using "procedural reasons/court

loopholes" or fabricated reasons for doing so.

Specifically, Plaintiff claims that on August 9, 2024, Ms. Sheree Y.

Cranford of Cliché Publications sent a proof copy of a book Plaintiff wrote titled

"Cancer" (the "book") to Plaintiff to review, but the book was confiscated by

prison authorities at the LCF.  Ms. Cranford in a subsequent correspondence with

Plaintiff confirmed that she had sent a copy of the book to him at the LCF on that

date.

On September 10, 2024, Plaintiff received a notification from prison authorities at the LCF that the book had been confiscated because it violated several prison policies, including the advocacy of racial supremacy.  Plaintiff alleges that these reasons were fabricated.  On September 30, 2024, Defendant Kowalski, the prison coordinator at the LCF, met with Plaintiff, accused him of failing to timely request a hearing on the book's rejection, and allegedly used biased policies, opinions, and rules to uphold the book's rejection.

Plaintiff subsequently sent several kites, or prison messages, to Defendant Janet Traore, the administrative assistant at LCF, to complain about the book's rejection.  He also alleged that he had already been allowed possession of the book when he was incarcerated at another prison.  Plaintiff accused the officials at Lakeland of systematically banning books written by African Americans concerning their experiences in America.

On October 24, 2024, Plaintiff asked Kowalski to send a copy of his book to his brother Byron P. Williams.  The next day, Kowalski responded to Plaintiff by email via JPay with a screenshot of Michigan Department of Corrections (MDOC) Policy Directive 05.03.118, which in effect states that if the warden agrees with the hearing officer's decision to reject a book, the warden shall send a copy of the rejection, the publication's cover, and a sample of the contents of the publication

that violate prison policy to the inmate.  There is no indication, however, that the warden at the LCF did so in this case.

On October 31, 2024, Plaintiff sent his publisher an email via JPay informing her that he had appealed the book's rejection to prison officials, that the appeal had been denied, and that the confiscation of the book and the denial of the appeal, was racially motivated against him because he is African American.  He specifically accused Defendant Traore of being a white supremacist even though she herself is African American.  Plaintiff alluded to the fact that he had exposed other African American prison officials for being white supremacists.

The following day, Plaintiff alleges that Ms. Traore escorted Plaintiff into the control center area of the LCF where she "angrily chastised him" before several white prison officers used physical violence or threats of violence, including the use of a taser, against Plaintiff.  Plaintiff alleges this was done in retaliation for exercising his First Amendment rights.

Later the same day, Plaintiff alleges that Defendant Traore further retaliated against him by issuing a fictitious prison misconduct charge of Insolence and a Notice of Intent to conduct a hearing on the charge.  The same day, Plaintiff was found guilty of this misconduct by Sergeant Shamaleh, who directed Plaintiff to sign the misconduct report under threat of receiving more serious punishment if he did not do so.

On November 8, 2024, Defendant Kowalski conducted a further hearing on the Insolence charge and imposed a ninety day restriction on Plaintiff's use of JPay.  Plaintiff alleges this was done to aid and abet Defendant Traore's retaliatory motive for issuing the misconduct charge.  Plaintiff claims that all of the grievances he filed regarding the misconduct charge were wrongly denied.

On November 9, 2024, Plaintiff was informed by Kowalski that Ms. Traore sent a copy of Plaintiff's book to the Michigan Department of Corrections' (MDOC) headquarters in Lansing, Michigan, suggesting that it be placed on the prison system's restrictive list.  Plaintiff sent a kite to A. Long, the mailroom staff member at the LCF, inquiring about the book's whereabouts, but never received a response.

On November 17, 2024, Plaintiff asked Defendant Keith Barber, the Michigan Legislative Ombudsman, to order prison staff at the LCF to provide Plaintiff an appeal form with which to appeal the misconduct charge or, alternatively, to find the claim exhausted.  Barber never responded.  On November 26, 2024, Plaintiff sent his final appeal regarding his misconduct charge to Defendant Richard Russell, the M.D.O.C. Grievance Coordinator, which was rejected.

On November 28, 2024, Defendant Traore, a prison guard at the LCF, whose first name is unknown, entered Plaintiff's cell at 3:00 a.m., snatched his pillow

from beneath his head, and warned Plaintiff that he would regret filing grievances against his sister, Ms. Traore.  Plaintiff claimed that he was put in fear of being assaulted.  Plaintiff's grievances regarding this incident were rejected.  Within his complaint, Plaintiff also alleges that Defendant Pawley, a prison official at the Chippewa Correctional Facility in Kincheloe, Michigan (URF), stole his television set.

Plaintiff claims that he and others on his behalf have complained to federal and state authorities about the alleged violation of his constitutional rights.  On January 28, 2025, Plaintiff was transferred to the MBP, allegedly in retaliation for the grievances he filed.  Several grievances that he has filed at the MBP have been denied.

### III. Discussion

#### A. Supervisory Liability

The complaint must be dismissed against Defendants Nagy and Cargore, the wardens at the Jackson Correctional Facilities, Defendant Morrison, the Warden at the LCF, and Defendant Schroeder, the Warden at the MBP, because Plaintiff failed to allege any personal involvement on the part of the defendants with the alleged unconstitutional deprivations.

A supervisory official like the wardens named here cannot be held liable under § 1983 for the misconduct of officials that the person supervises unless the

plaintiff can demonstrate that "the supervisor encouraged the specific instance of misconduct or in some other way directly participated in it." *Combs v. Wilkinson,* 315 F.3d 548, 558 (6th Cir. 2002) (quoting *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984)). A plaintiff must show, at a minimum, that the supervisory official "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id.* "Supervisory liability under § 1983 cannot be based on a mere failure to act but must be based upon active unconstitutional behavior." *Combs,* 315 F.3d at 558 (citing to *Bass v. Robinson,* 167 F.3d 1041, 1048 (6th Cir. 1999)). Moreover, any notice that the wardens might have received through the prison's grievance system would be insufficient to make them personally liable for the alleged unconstitutional acts here. *See Sarr v. Martin,* 53 F. App'x 760, 762 (6th Cir. 2002).

Wardens Nagy, Cargore, Morrison, and Schroeder are thus not liable under § 1983 in a supervisory capacity for the alleged violation of Plaintiff's rights, because Plaintiff failed to allege that the wardens committed any of these acts or acquiesced in the other parties' conduct. *See Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *see also Smith-El v. Steward*, 33 F. App'x 714, 716 (6th Cir. 2002).

8

## B. Wrongful Grievance Denial Claim

Plaintiff is not entitled to relief on his claim that several defendants wrongly denied his administrative grievances.  The Sixth Circuit has repeatedly held that the wrongful denial of a prison grievance by a prison official does not violate any federal constitutional right, in the absence of any allegation that the official was involved in the underlying activity that was challenged in the grievance.  *See Grinter v. Knight*, 532 F.3d at 576 (the denial of administrative grievances or the failure to act by prison officials does not subject supervisors to liability under § 1983); *Shehee v. Luttrell,* 199 F.3d 295, 300 (6th Cir. 1999) (prison officials who were not involved in inmate's termination from his commissary job, and whose only roles involved the denial of administrative grievances or the failure to act, were not liable under § 1983 on a theory that their failure to act constituted an acquiescence in the unconstitutional conduct); *see also Walker v. Michigan Dept. of Corrections,* 128 F. App'x 441, 445 (6th Cir. 2005) (state prisoner did not have constitutionally protected due process right to unfettered access to prison grievance procedures, and, consequently, prisoner was not entitled to relief on his claim under § 1983 that he was arbitrarily denied access to prison's grievance procedures due to modified access procedure); *Lee v. Michigan Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004); *Keenan v. Marker,* 23 F. App'x 405, 407 (6th Cir. 2001); *Bittner v. Wilkinson,* 19 F. App'x 310, 313 (6th Cir. 2001) (state inmate did not

9

state viable § 1983 claim when he alleged that prison officials denied or

disregarded his grievances over alleged incidents in which inmate was assaulted or

subjected to retaliation by prison officers).

In addition, Michigan law does not create a liberty interest in a prison

grievance procedure. *Keenan,* 23 F. App'x at 407(citing *Olim v. Wakinekona*, 461

U.S. 238, 249 (1983)); *see also Proctor v. Applegate,* 661 F. Supp. 2d 743, 767

(E.D. Mich. 2009) (internal citations omitted).  Consequently, to the extent the

complaint raises a claim based on the wrongful denial of grievances, that claim is

**DISMISSED**.

That being said, prisoners do have the right to file non-frivolous institutional

grievances without being subject to retaliation. *Walker*, 128 F. App'x at 445.

However, "Modified Grievance Restrictions" which require a prisoner to contact

the Grievance Coordinator to obtain the proper form, do not constitute an adverse

action which can support a retaliation claim.[1]  *Id.* at 446.  For that reason,

Defendants Richard Russell, Keith Barber, T. Cobbs, Michael E. Ulch, Jennifer

---

[1] Specifically, the notices of rejections provided by Williams stated that they are "attempt[s] to redirect [him] to properly file and avoid being placed on Modified Access (MA)." Modified Access is "not a punitive action, but an attempt to educate [him] on the process of properly filing."  (*See* ECF No. 1, PageID.23.) While on Modified Access, individuals must "request a grievance from [their] GC who will provide the form if [the] grievance is not rejectable pursuant to policy." (*Id.*) This policy is identical to that which was found insufficient to support a retaliation claim in *Walker*. 128 F. App'x at 446.

10

Rohrig, J. Brawley, and Mr. Bolton, are **DISMISSED FROM THIS ACTION** as the sole allegations against them are that they either: (1) wrongfully denied a grievance; (2) ignored a grievance; or (3) threatened to place Williams on Modified Grievance Restrictions.

### III. CONCLUSION

**IT IS HEREBY ORDERED THAT** the complaint is **DISMISSED IN PART**.  Specifically, the wrongful denial of grievance claim is **DISMISSED**.

**IT IS FURTHER ORDERED** that the following defendants are **DISMISSED** from this action: Wardens Nagy, Cargore, Morrison, and Schroeder.

**IT IS FURTHER ORDERED** that the additional following defendants are also **DISMISSED** from this action: Richard Russell, Keith Barber, T. Cobbs, Michael E. Ulch, Jennifer Rohrig, J. Brawley, and Mr. Bolton.

At this stage, Williams' claims may proceed against the remaining Defendants: C. Foster, Makey Ow, Unknown Mr. Traore, Janet Traore, Karen Kowalski, and Unknown Pawley. The Clerk's Office is **DIRECTED** to update the case caption accordingly.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: September 8, 2025

11

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, September 8, 2025, by electronic and/or U.S. First Class mail.

s/Aaron Flanigan
Case Manager
